IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Case No. |
| AMERICRUDE, INC., SHEZAD AKBAR a/k/a TONY ACKERMAN, and DANIEL WAITE, | § § § § § § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendants Americrude, Inc. ("Americrude"), Shezad Akbar a/k/a Tony Ackerman ("Akbar"), and Daniel Waite ("Waite") (collectively "Defendants"), and alleges as follows:

### I.

### SUMMARY

1. From March 2015 through at least November 2016, Akbar used Americrude, a company he wholly owned and controlled, to defraud at least 17 investors out of at least $950,000 in connection with various securities offerings conducted for the purported purpose of acquiring interests in oil-and-gas prospects. Americrude, Akbar, and Waite generally solicited investors from multiple states and lured them to invest in the fraudulent Americrude enterprise using a combination of high-pressure and deceptive sales pitches and false and misleading offering materials.

2. Americrude's salespeople cold-called investors across the country to pitch Americrude's various offerings. Akbar trained the sales staff and created the content for the

sales pitches, while Waite personally made sales calls and monitored the sales staff. During these calls, Americrude's salespeople and Waite made false and misleading statements about: (i) Americrude's purported track record, (ii) how Americrude would use investor funds, (iii) the measures Americrude had in place to protect investors' principal investments, and (iv) the identity of Americrude's management.

3. Additionally, Americrude and Akbar drafted and used fraudulent offering materials that included project brochures and—on at least one occasion—a private placement memorandum ("PPM"). The offering materials contained materially false and misleading representations and omitted to disclose material facts about: (i) the potential oil reserves for the oil-and-gas prospects included in Americrude's projects; (ii) the number of wells Americrude had previously drilled; (iii) Americrude's track record of success in the oil-and-gas industry; and (iv) the use of offering proceeds by Americrude.

4. As part of their enterprise, Akbar and Americrude enlisted Waite to serve as Americrude's nominal President to, in part, help conceal Akbar's involvement in the company and his prior felony convictions for theft and drug possession. Akbar also misrepresented his identity in telephonic sales pitches and Americrude's written offering materials, always referring to himself as "Tony Ackerman," a fictitious name he used.

5. In addition to his role in disseminating false and misleading representations about Americrude, Waite solicited investors despite being neither registered as a broker-dealer nor associated with a registered broker-dealer. In exchange for his services, Waite received at least $32,049.52 in commissions tied to his sales of securities to investors.

6. By reason of these activities and the conduct described in more detail below, Defendants Americrude, Akbar, and Waite have violated and, unless enjoined, will continue to

violate the registration and antifraud provisions of the federal securities laws, specifically Sections 5(a), 5(c), and 17(a)(2) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder. Similarly, Defendant Waite has violated and, unless enjoined, will continue to violate the broker registration requirements of the federal securities laws, specifically Section 15(a) of the Exchange Act.

7. In the interest of protecting the public from any further fraudulent activity and harm, the Commission brings this action against the Defendants seeking permanent injunctive relief, disgorgement of ill-gotten gains resulting from Defendants' violations of the federal securities law, accrued prejudgment interest on those ill-gotten gains, and civil monetary penalties.

## II.

## JURISDICTION AND VENUE

8. Defendants offered and sold securities in the forms of purported general and limited partnership units in limited partnerships ("LP units") to investors and prospective investors. The LP units are investment contracts and, therefore, securities under Section 2(a)(1) of the Securities Act [15 U.S.C. §77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. §78c]. As such, the Court has jurisdiction over this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78(aa)].

9. Venue is proper because a substantial part of the events and omissions giving rise to the claims occurred within the Northern District of Texas, Dallas Division. Americrude

maintained its headquarters and principal place of business in Dallas, Texas. Akbar and Waite solicited investors from Americrude's headquarters.

## III.

## DEFENDANTS

10. **Americrude, Inc.** is a Montana corporation headquartered in Dallas, Texas. Neither Americrude nor its securities are registered with the Commission. In March 2015, Akbar bought Energy Spear, Inc. ("Energy Spear"), a shell company incorporated in Montana in October 2007. Following this purchase, Akbar changed Energy Spear's name to Americrude and established its headquarters in Dallas, Texas. From the time Akbar purchased Americrude, he used it to conduct oil-and-gas related securities offerings.

11. **Shezad Akbar a/k/a Tony Ackerman**, age 30, resides in Carrollton, Texas. Akbar wholly owns Americrude and is the company's Chief Executive Officer, sole Director, and control person. In August 2013, Akbar was convicted of theft and possession of a controlled substance in Denton County. As a result of these convictions, Akbar was sentenced to a nine-month prison sentence.

12. **Daniel Waite**, age 30, resides in Garland, Texas. Waite served as Americrude's nominal President from March 2015 through November 2015.

## IV.

## STATEMENT OF FACTS

A. **Americrude's Business Operations and Sales Process**

13. Americrude raised capital from investors through the sale of units in purported limited and general partnerships. Akbar established entities that he called limited partnerships through which Americrude offered investors the opportunity to acquire interests in various oil-

and-gas prospects. Americrude represented to its investors that the company and investors in the limited partnerships would proportionately share in the production revenue generated by these oil-and-gas prospects.

14. Americrude conducted at least the following seven offerings (collectively the "Americrude Offerings") from March 2015 through November 2016:

- Empire Project LA, LP;
- Partners #2 Completion Program;
- Lonestar L.B., LP (the "Lonestar Project");
- Wichita Collateralized Production Acquisition Project;
- Longhorn Offset Completion Project (the "Longhorn Project");
- Nowata Acquisition Project (the "Nowata Project"); and
- Abilene Acquisition Project.

15. To market and sell its offerings, Americrude maintained a boiler room of sales employees, who used purchased lead lists to cold-call hundreds of individuals across the country every day to gauge and stoke interest in the offerings. Akbar gave Americrude's sales staff details about the offerings, which they used in phone calls to solicit investors. Waite, as Americrude's titular President, personally made sales calls and monitored the rest of Americrude's sales staff to ensure they were conveying the information about Americrude's securities offerings that was provided to them by Akbar.

16. When prospective investors expressed interest in an Americrude project, Americrude sent them written offering materials, which generally included at least a project brochure and a subscription agreement ("Offering Materials"). These Offering Materials were drafted, edited, reviewed, and approved by Akbar. Waite, or one of the salespeople he monitored, scheduled a closing call with prospective investors.

17. Although Americrude employed a sales staff, Akbar was Americrude's only closer. As detailed below, during closing calls, Akbar further misled investors by lying about Americrude's prior performance and track record, the potential reserves associated with Americrude's purported prospects, the expected production on the various prospects and, by virtue of that production, the expected returns investors would earn by investing with Americrude.

18. Throughout his contact with potential investors, Akbar never disclosed his real name. Rather, he referred to himself as "Tony Ackerman" or "Tony," giving investors no way to know his true identity or discover his prior felony convictions. Even though Akbar, as Americrude's control person, exercised exclusive authority and control over Americrude's finances, bank accounts, and bookkeeping functions, Americrude did not disclose to investors Akbar's control over, and involvement with, the company.

**B.  Americrude's Offering Materials Made Material Misrepresentations and Omitted Material Facts to Investors**

19. The Offering Materials that Americrude circulated to investors contained numerous misrepresentations and omissions of material fact about: (i) the potential oil reserves for the oil-and-gas prospects included in Americrude's projects; (ii) the number of wells Americrude had previously drilled; (iii) Americrude's track record of success in the oil-and-gas industry; (iv) the use of offering proceeds by Americrude; and (v) Akbar's identity. At the time Akbar and Americrude disseminated the offering materials to investors, they knew or were reckless in not knowing the falsity of these representations.

20. For example, the brochures for the Lonestar and Longhorn Projects both stated that the potential reserves for the Texas prospect in these projects were 900,000 barrels of oil ("BO") and 33 billion cubic feet of gas ("BCGF"). This representation was false, as the

geological analysis provided to Americrude for the Texas prospect projected potential reserves more than 50% lower than the figures in the brochures (421,000 BO and 15.69 BCGF).

21.   The brochure for the Nowata Project stated: (1) Americrude had drilled over 515 wells in Oklahoma; (2) Americrude had a 98.7% success rate in Oklahoma; (3) Americrude was the number one operator in Nowata; and (4) Americrude was a top 10 operator in Oklahoma for production and active wells.  All of these representations were false.  Americrude had never: (1) drilled *any* wells, (2) conducted *any* oil-and-gas operations in Oklahoma, and (3) been an operator on any wells.

22.   The PPM for the Lonestar Project also perpetuated the lie about Akbar's "Tony Ackerman" fictitious persona.  The PPM discussed how "Ackerman" had been successful in the real estate mortgage industry, owned his own successful real estate firm, worked his way up to the position of Vice President with another oil-and-gas company, and had vast knowledge and experience that spans several areas of the oil-and-gas industry.  The PPM, however, fails to disclose Akbar's true identity and criminal history.

23.   Americrude also incentivized numerous investors by executing assurance agreements that seemingly guaranteed their investments.  Pursuant to these agreements, Americrude promised to pay back the investors a certain percentage of their investment capital every six months until the investors recouped their initial investment.  For investors who received this assurance, Americrude purported to guarantee all of their investment by agreeing to make these payments regardless of whether the oil-and-gas wells were completed or produced any revenue.  Waite, pursuant to Akbar's instructions, signed these assurances as President of Americrude.

## C.  Akbar Makes Misrepresentations and Omits Material Facts To Investors

24.  Akbar made multiple material misrepresentations and omissions in his closing calls and email communications with potential investors in the Americrude Offerings. For example, in recorded telephone calls between Americrude and investors from April 2015 through at least September 2015, Akbar lied about the company's track record, falsely claiming the company was ranked as the 87th top operator in the entire world and that the company had a success rate of 85%, hitting on eight or nine of every ten wells it drilled. In reality, the company had acquired small interests in only two wells and had never drilled any wells.

25.  Furthermore, in recorded telephone calls between Americrude and investors from April 2015 through at least September 2015, Akbar also lied to investors about the company's track record in producing investment returns, claiming that Americrude had paid out $421 million in revenue to investors alone in the last seven years. Akbar also claimed that the company's previous "partners" made their money back in seven months. This was a lie, as Americrude had not paid out *any* money to investors at the time Akbar made these claims.

26.  In recorded telephone calls between Americrude and investors from April 2015 through at least September 2015, Akbar also lied about prior programs and the company's inventory, claiming Americrude previously had a 20-well "package" in Kentucky where investors made their money back in six months and doubled their money multiple times. Akbar also told investors that the company had over 100 wells. Given Americrude's actual prospect ownership and the lack of any returns associated with its prospect ownership, these representations were false.

27.  Furthermore, in recorded telephone calls between Americrude and investors from April 2015 through at least September 2015, Akbar also lied about the purported reserves on

Americrude's prospects, claiming there were: (a) over 900 million barrels of oil in reserves worth $45 million, and (b) 33 billion cubic feet of gas worth $82.5 million. Based on information in the possession of Americrude and Akbar at the time of these statements, these representations were false and misleading.

28.   Akbar made other misrepresentations and omissions in emails with potential investors. In a June 3, 2015 email, Akbar told one potential investor that the Lonestar Project would have three wells in Texas, three wells in Louisiana, and that Americrude had 100% success on its leases for the Lonestar Project. In an October 31, 2016 email, Akbar told another potential investor that Americrude drilled 43 wells on one of its projects and hit oil on all 43. These representations were false, as the Texas portion of the Lonestar Project was not originally intended to be a three-well project and Americrude had never drilled or hit on any wells.

29.   Akbar knew, or was severely reckless in not knowing, the falsity of the representations and omissions he made about his identity, the true nature of the Americrude Offerings, Americrude's track record of success, Americrude's prior investment returns, potential oil reserves for the Americrude Offerings, and Americrude's ownership interests in oil-and-gas wells.

**D.   Waite Makes Misrepresentations To Investors**

30.   Waite also made several material misrepresentations in his communications with investors. In recorded telephone calls between Americrude and investors from June 2015 through at least October 2015, Waite told potential investors the same lies about Americrude having paid $421 million to its investors, being the 87th top oil-and-gas operator in the world, and having a 20-well "package" in Kentucky. Waite also claimed that Americrude had drilled 98 wells and that the company was "100 percent accurate" in hitting on its wells.

31. All of these representations were false. At the time of Waite's calls, Americrude had not paid out any money to investors, had not drilled or operated any oil-and-gas wells, had not hit on any wells, and had no oil-and-gas projects in Kentucky.

32. Waite, as Americrude's President, knew, or was severely reckless in not knowing, the falsity of these representations.

### E. Misuse of Offering Proceeds

33. Americrude, Akbar, and Waite represented to investors that investor funds would be used to purchase a specified number of wells in specific states. For example, in the Lonestar Project, Americrude represented in the Offering Materials, and Akbar and Waite represented in telephone calls, that investor funds would be used to purchase interests in six wells: three in Texas and three in Louisiana. Similarly, Americrude's Offering Materials and Akbar's emails to multiple potential investors between December 2015 and January 2016 represented to investors that funds raised for the Nowata Project would be used to purchase interests in 95 different wells in Oklahoma. Across the seven offerings, Americrude represented it would acquire interests in at least 101 wells across three states.

34. However, even though Americrude received more than $950,000 from investors to acquire these interests, Americrude spent only 40% of that amount to purchase interests in *two* prospects—a prospect in Texas for the Lonestar Project and a prospect in Texas for the Partners 2 Project.

35. Rather than spending the funds as represented, Americrude and Akbar misused and misappropriated the investors' funds. As the controller of the company's bank accounts, Akbar comingled the funds from the various offerings. Company bank records show at least $196,000 in payments at retail stores, restaurants, night clubs, and to lease cars.

36. By comparison, investors in the Americrude Offerings collectively received back less than $2,500 in oil-and-gas production revenue, which was less than 0.26% of their investments with Americrude.

### F. The Offerings of Partnership Units in the Americrude Offerings Were Not Registered With the Commission or Exempt From Registration.

37. Section 5 of the Securities Act prohibits offers, directly or indirectly, to sell a security unless a registration statement for that security has been filed with the Commission. A registration statement is transaction-specific. Each sale of a security must either be made pursuant to a registration statement or fall under a registration exemption.

38. The partnership units Americrude sold in the Americrude Offerings were investment contracts, which are securities under Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act.

39. Investors in the Lonestar Project executed a partnership agreement that effectively stripped them of all partnership powers. The agreement named Americrude as the Managing General Partner of the partnership and stated that: (i) Americrude had the exclusive authority to manage the partnership's business; (ii) Americrude had full and exclusive power and authority to do all things deemed necessary or desirable by Americrude to conduct the business of the partnership; and (3) no partner, including general partners, could take part in the management of the partnership or transact any business of the partnership.

40. Additionally, Americrude marketed its partnership interests for all of the Americrude Offerings through unsolicited cold calls to thousands of potential investors whose contact information they obtained from lead lists. Americrude did not limit its sale of interests to investors with experience in, or knowledge of, the oil-and-gas industry; in fact, several investors lacked prior experience investing in oil and gas projects.

41.     Further, because of the way Americrude structured the Americrude Offerings, investors had no power to manage the affairs of the projects.  Investors in the Americrude Offerings lacked access to each other and were unable to exercise their limited power to replace Americrude as the Managing General Partner of the partnerships.  Likewise, some investors in the Americrude Offerings never received any partnership agreements, were unaware of any powers and rights that they may have had (including any voting rights), and, because they had no access to other investors, lacked any mechanism to exercise any powers they may have had.

42.     Americrude also comingled the funds from all of the Americrude Offerings into bank accounts owned and controlled by Americrude and Akbar.  Accordingly, if the investors voted to remove Americrude, they would have had no control over the partnerships' cash assets.

43.     At the time of the offers and sales of the partnership units in the Americrude Offerings, there were no registration statements filed with the Commission and in effect. Further, no registration exemption applied to the offering of partnership units in the Americrude Offerings.

44.     From at least May 2015 through November 2017, Defendants raised at least $950,000 from at least 17 investors across eight states through the sale of partnership units in the Americrude Offerings.

45.     Defendants offered and sold partnership units in the Americrude Offerings using the means or instruments of interstate commerce, including but not limited to telephones, the Internet, commercial couriers, wires, and the mails.

### G. Waite Acted As an Unregistered Broker.

46. Section 15(a)(1) of the Exchange Act prohibits a broker or dealer from using jurisdictional means such as the telephone or mails to effect transactions in securities unless the broker or dealer is registered with the Commission. Section 3(a)(4) of the Exchange Act defines a "broker" as any person who is engaged in the business of effecting transactions in securities for the account of others.

47. Waite actively solicited investors over the phone to purchase partnership units in the Americrude Offerings, thereby affecting purchases and sales of securities for the accounts of the others.

48. During the relevant period, Waite offered and sold partnership units in the Americrude Offerings while not registered as a broker-dealer with the Commission or affiliated with a broker-dealer registered with the Commission.

49. Further, Waite supervised and monitored Americrude's sales staff and received transaction-based compensation in the form of sales commissions based upon a percentage of the amount of investor funds raised.

## V.

## FIRST CLAIM FOR RELIEF

**Offers and Sales of Unregistered Securities
Violations of Securities Act Sections 5(a) and 5(c)
[15 U.S.C. §§ 77e(a) and 77e(c)**

**[against all Defendants]**

50. The Commission repeats and re-alleges Paragraphs 1 through 49 of this Complaint, as if fully set forth herein.

51. By their conduct as alleged above, Defendants Americrude, Akbar, and Waite, directly or indirectly, singly or in concert with others, (i) made use of means or instruments of

transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; or (iii) may use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

52. No valid registration statement was filed or was in effect with the Commission in connection with Defendants' offer or sale of securities.

53. There were no applicable exemptions from registration, and Defendants Americrude, Akbar, and Waite therefore violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## SECOND CLAIM FOR RELIEF

**Violations of the Antifraud Provisions of the Securities Act
Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)]**

**[against all Defendants]**

54. The Commission repeats and re-alleges Paragraphs 1 through 49 of this Complaint, as if fully set forth herein.

55. By engaging in the foregoing misconduct, Defendants Americrude, Akbar, and Waite, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails, and at least negligently, obtained money or property by means of untrue statements of material fact or omitted to state

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56. Defendants acted at least negligently in their actions regarding the representations and omissions alleged herein.

57. By engaging in this conduct, Defendants Americrude, Akbar, and Waite violated, and unless enjoined will continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

### Violations of Antifraud Provisions of the Exchange Act
### Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5]

**[against all Defendants]**

58. The Commission repeats and re-alleges Paragraphs 1 through 49 of this Complaint, as if fully set forth herein.

59. By engaging in the foregoing misconduct, Defendants Americrude, Akbar, and Waite, in connection with the purchase or sale of securities, by use of means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60. Defendants Americrude, Akbar, and Waite made the above-referenced misrepresentations and omissions knowingly or with severe recklessness.

61. By reason of the foregoing, Defendants Americrude, Akbar, and Waite violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF

**Violation of Broker-Dealer Registration Provisions of the Exchange Act
Section 15(a) [15 U.S.C. § 78o(a)]**

**[against Defendant Waite]**

62. The Commission repeats and re-alleges Paragraphs 1 through 49 of this Complaint, as if fully set forth herein.

63. Defendant Waite, by use of the mails or any means or instrumentality of interstate commerce, effected transactions in, or induced or attempted to induce the purchase or sale of, securities without being registered with the Commission as a broker or dealer or as an associated person of a registered broker or dealer.

64. By engaging in this conduct, Defendant Waite violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## PRAYER FOR RELIEF

For these reasons, the Commission respectfully requests that this Court enter a final judgment:

a. Permanently enjoining Americrude, Akbar, and Waite from violating Sections 5(a), 5(c), and 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder;

b. Permanently enjoining Waite from violating Section 15(a) of the Exchange Act;

c. Permanently enjoining Americrude from directly or indirectly, including, but not limited to, through any entity owned or controlled by it, participating in the issuance, purchase, offer, or sale of any securities;

d. Permanently enjoining Akbar from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any securities; provided, however, that such injunction shall not prevent Akbar from purchasing or selling securities listed on a national securities exchange for his own personal account;

  e. Permanently enjoining Waite from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any oil-and-gas related securities; provided, however, that such injunction shall not prevent Waite from purchasing or selling oil-and-gas related securities for his own personal account;

  f. Ordering Americrude, Akbar, and Waite to disgorge ill-gotten funds and benefits obtained, or to which they were not otherwise entitled, as a result of the violations alleged herein, plus prejudgment interest thereon;

  g. Ordering Americrude, Akbar, and Waite to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Sections 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

  h. Granting such additional relief as the Court deems just, appropriate, and equitable.

DATED: March 7, 2018

Respectfully submitted,

/s/ Matthew Gulde

Matthew Gulde
Illinois Bar No. 6272325
Christopher Reynolds
Texas Bar No. 24051247
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102-6882
(817) 978-1410
(817) 978-4927 (fax)
guldem@sec.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION